Curia, •per

Dargan, Ch.
The defendant has moved to reverse the decree of the Circuit, on a variety of grounds: the first of which is, “ that the contract, as alleged in the bill, was not proved by two witnesses, and was denied in the answer.” The contract, as alleged in the bill, was substantially proved by G. D. Gayle, who represented himself as the defendant’s agent, when the land was surveyed. The defendant himself, in his answer, admitted a parol contract, not differing materially from that charged in the bill. In the opinion of this Court, the Chancellor was well warranted, on the evidence, to decree a specific performance of the agreement.
The second ground of appeal is that, “there was no proof in the case to justify the Chancellor in stating in the decree, that Joseph Palmer, sr. devised this land to the complainant, his son.” There was, in fact, no proof on the trial, that the complainant was the devisee of the vendor, Joseph Palmer. As a general rule, the purchaser of land would not be coerced by a decree of this Court, to perform his contract, without an investigation as to the title. But cases not unfre-quently occur, in which the vendee will be considered as having waived his objections to the title, and will be decreed to periorm, and to accept such title as the vendor is able to give. Burroughs v. Oakly, Fleetwood v. Green, VanLew v. Parr. The case of the Margravine of Anspach v. Noel, is very similar in its circumstances to the present case. In the case cited, the purchaser took possession of the premises, in pursuance of the terms of the agreement, within a *21 short time after its execution, and very soon afterwards received an abstract of title, to which he made no objection, ( until about two years after it was delivered to him. In the mean time, he made alterations in the premises, and let them; and had written a letter, offering excuses for delaying payment of the purchase money. An inquiry into the title was refused, and a specific performance was decreed. The Yice Chancellor, Sir Thomas Piumer, says, “ the alterations of the premises, and the letting of them, were acts strongly indicating an approval of the title.” The letter of the 4th January, in which the defendant expresses his vexation at being obliged to delay payment of the purchase money, seems founded on his approval of the title; for if the title was objectionable, he could not accuse himself of delaying payment of the purchase money. Until the title was completed, he was not bound to pay, <fcc. It would be difficult to conceive a case more parallel with the one now before us. In the latter, the complainant’s devisor sold the land to the defendant in 1841. In the same year, the defendant went into possession of the land, and continued in possession until 1846. In 1842 the land was surveyed, in the presence of the defendant’s own agent, and the lines run, without any objection being made, either as to the quantity set off to him, or the sufficiency of the title. In the mean time, the defendant, with a knowledge on the part of his agent, and, therefore, of himself, of the lines which had been run, and the quantity embraced within those lines, continued to occupy the land, to treat it as his own, and to make extensive alterations, by clearing and cultivating large portions of it. And during the continuance of his possession, as in the case of the Margravine of Anspach v. Noel, we find him addressing a letter to the complainant, offering apologies for the nonpayment of the purchase money, and expressing a strong desire to pay at an early day, and as soon as his finances, (which had been deranged by disasters to his crop) would admit. In this letter, not a syllable of suspicion is breathed upon the title. No objection of this character is made, until after the bill is filed. There is now no specific objection made as to the title. Nor does it appear that it is actually defective in the slightest particular. Under these circumstances, this Court is of the opinion, that the defendant has waived his right to object to the sufficiency of the complainant’s title; or, to take the most favorable view of the case possible, as to him, he has placed himself in a position in which the onus would be shifted from the complainant’s shoulders to his own, and in which it would be for him to shew that the complainant had no title.
The third ground of appeal is that “ the notice of the complainant, in February, 1846, as set out in the bill, was a *22 rescisión of the contract.” It must be remembered that the (je|en(jantj without paying the purchase money, or in any "way complying with the conditions of the contract, was in possession, had extensively cleared, and was cultivating the land. Under these circumstances, the complainant addressed the defendant a note, to the effect that he must cease all further use and cultivation of the land, until he had complied with the conditions of the purchase. This, the defendant says, was a rescisión of the contract. It is certainly a fanciful view of the subject, to construe an act into a rescisión of the contract, which was, in fact, a direct claim and demand for its fulfilment, according to its terms. The complainant, in that notice, did nothing more than he was entitled to do; to call upon the defendant to suspend his alterations, and his acts of waste, until he had complied with the conditions of the sale. In doing this, he did only what this Court would have enjoined and enforced, if its interposition had been sought.
The fourth ground of appeal is that “ his Honor decreed full interest, although, from February, 1846, defendant, by order of the complainant, was not in possession of any of the said land.” The view taken of the last ground, applies with full force to this. The defendant was the party in default. He had been inducted into the possession, soon after the execution of the contract; at which time he should have paid the purchase money. The complainant was ready to make him titles, and had, several times, called on him to consummate the purchase. The delay was entirely on the part of the defendant, until at length the complainant, weary at the delay, required him to suspend the use of the land until he had complied with the terms of the contract. If he has not, from 1846, enjoyed the use of the land, as an equivalent for the interest, it is his own default.
The fifth ground of appeal is that “ there was no proof that the witness, Gayle, was the agent of the defendant in the transaction, or acted for him in any other capacity than that of overseer.” On this ground it is sufficient to say, that the Chancellor, in his decree, reports this witness as saying that when Dr. Peter Palmer came with a surveyor to survey the land, the witness “ went with them, as the agent of the defendant, and they went round the lines.”
The sixth ground of appeal is that “there was nothing in the proof to overrule the defendant’s plea of the statute of frauds.” The provisions of the statute of frauds have no application to a case like the present. The doctrine is too familiar to call for extended comment. The case is relieved from the operation of the statute, by the contract having been fully performed on the part of the complainant, so far as he was able to perform. The contract was, of course, *23 null in its inception. But the complainant had let the defendant into the most full and complete possession, and wasv ready and insisted to give him titles, and to receive the purchase money. It is almost supererrogation to say, that the statute of frauds has no application to such a case.
The defendant’s seventh and last ground of appeal is, “that the Chancellor erred in requiring the defendant to receive the title of the complainant, without any proof that the title to the land was in him; more especially as an order had been made in the case by Chancellor Harper, at June Term, 1847, as follows: — On motion oí F. J. & M. Moses, it is ordered that it be referred to the commissioner to inquire and report whether the title to the land referred to in the said bill, is vested in the complainant, and if so vested, whether the said complainant can make an unincumbered title for the same.” The objection contained in the first part of this ground of appeal, — (that in reference to the complainant’s ability to give a good legal title) has been considered and disposed of, in the remarks which I have made upon the second ground of appeal. That part of the seventh ground of appeal which relates to the order of reference as to the title, is also unavailing. An order of reference as to the title, in a case like the present, is administrative. It was not, in any sense, a judgment upon any of the rights of the parties involved in the pleadings ; but was intended, merely to facilitate the investigation, and enable the Court to adjudge. As such, it was liable to be recalled by the Chancellor who made it, or by any succeeding Chancellor. This order of reference to the commissioner, as to a preliminary inquiry, related to a question which the Chancellor was competent to examine. The Commissioner not being ready with his report, the Chancellor had a right, himself, to examine into the matters referred to the Commissioner — or, in other words, there was no original necessity for the order of reference to have been made. It is a rule of practice founded on convenience. If the report of the Master had been submitted, and he had found against the title of the complainant, it by no means follows but that the defendant would still have been decreed specifically to perform his agreement, and to have rested for his security on the warranties of the defendant; because he had done acts bv which he had waived his right to object to a defective title as a ground of non-performance. The existence of the order of reference as to the title, might possibly have been a good ground for a motion to continue on the part of the defendant. He might have alleged surprise. But if I am not wrongly impressed, the defendant himself insisted that the trial should go on, notwithstanding the report had not come in, and the reference had not been held.
*24 It is ordered and decreed, that the appeal be dismissed, and the decree of the Circuit Court be affirmed.
The whole court concurred.

Decree affirmed.